| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>    **JUDICIAL DISTRICT**<br>31st    **JUDICIAL CIRCUIT**<br>St. Clair    **COUNTY PROBATE** | **SUMMONS** | ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>**21001181CB** |
|---|---|---|

| **Court address** | **Court telephone no.** |
|---|---|
| 31st Circuit Court, 201 McMorran Blvd., Port Huron, MI 48060 | 810-985-2031 |

| Plaintiff's name(s), address(es), and telephone no(s).<br>Continental Casualty Company, as subrogee of Canadian National Railway Company, et al | | Defendant's name(s), address(es), and telephone no(s).<br>David J. Joseph Company<br>c/oThe Corporation Company,<br>40600 Ann Arbor RD E STE 201<br>Plymouth, MI, 48170 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Timothy Poeschl, Esq., P84944<br>GROTEFELD HOFFMANN<br>150 S Fifth Street, Ste. 3650<br>Minneapolis, MN 55402 - (612) 564-4881 | v | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>**JUN 2 5 2021** | Expiration date<br>**91 DAYS** | Court clerk<br>**JAY M. DeBOYER** |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**RECEIVED JAY M. DEBOYER 06-25-2021 11:19:54 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

MC 01 (9/19) SUMMONS      MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

# STATE OF MICHIGAN

## IN THE 31st CIRCUIT COURT FOR THE COUNTY OF ST. CLAIR

CONTINENTAL CASUALTY
COMPANY, as subrogee of
CANADIAN NATIONAL RAILWAY
COMPANY,

    and

CHUBB INSURANCE CO. OF CANADA,
as subrogee of CANADIAN NATIONAL
RAILWAY COMPANY,

    and

LLOYD'S OF LONDON, SGL No. 1, NEW
LINE SYNDICATE 1218, as subrogees of
CANADIAN NATIONAL RAILWAY
COMPANY,

    and

RSA CANADA, as subrogee of
CANADIAN NATIONAL RAILWAY
COMPANY

    Plaintiffs,

  **v.**

DAVID J. JOSEPH COMPANY,

    Defendant,





---

Timothy S. Poeschl, Esq., P84944
GROTEFELD HOFFMANN
GORDON OCHOA & EVINGER, LLP
150 S Fifth Street
Suite 3650
Minneapolis, Minnesota 55402
(612) 564-4881
tpoeschl@ghlaw-llp.com
*Attorneys for Plaintiffs*

---

**RECEIVED JAY M. DEBOYER 06-25-2021 11:19:54 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

Plaintiffs verify that this action is comprised of business or commercial disputes, as defined in MCL 600.8031(1)(c), in which the amount in controversy exceeds $25,0000 and meets the Statutory requirement to be assigned to the Business Court.

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

## COMPLAINT AND JURY DEMAND

NOW COME the Plaintiffs, CONTINENTAL CASUALTY COMPANY, as subrogee of Canadian National Railway Company, CHUBB INSURANCE CO., as subrogee of Canadian National Railway Company, CERTAIN UNDERWRITERS AT LLOYD'S, as subrogees of Canadian Railway Company, and RSA CANADA, as subrogee of Canadian National Railway Company, by and through their attorneys, GROTEFELD, HOFFMANN, GORDON, OCHOA & EVINGER, LLP, and complain of the Defendant, DAVID J. JOSEPH COMPANY as follows:

## PARTIES

1.     At all relevant times, CONTINENTAL CASUALTY COMPANY, (hereinafter referred to as "CCC") was an insurance company with its principal place of business in Chicago, Illinois and was engaged in the business of insuring businesses that operated throughout the United States and Canada.

2.     At all relevant times, CHUBB INSURANCE COMPANY OF CANADA (herein after "CHUBB") was a foreign insurance company with its principal place of business in Toronto, Ontario and was engaged in the business of insuring businesses that operated throughout the United States and Canada.

2

3.     At all relevant times, RSA CANADA (herein after "RSA") was a foreign insurance company with its principal place of business in Montreal, Quebec and was engaged in the business of insuring businesses that operated throughout the United States and Canada.

4.     At all relevant times, LLOYD'S OF LONDON (herein after "LLOYD'S") is the name for the members of syndicates that engage in the business of insuring certain businesses, which include businesses that operated throughout the United States and Canada. On information and belief, LLOYD'S is the name and members of the following syndicates: Newline Syndicate 1218, and Lloyd's Syndicate 1301.

        a. Newline Corporate Name Limited, a corporation organized in England and Wales with its principal place of business in London, and, which, on information and belief is a "name" and member of Newline Syndicate 1218;

        b. SGL No. 1 Limited, which, upon information and belief, a private limited company formed under the laws of and having its principal place of business in the United Kingdom and, on information and belief, is a "name" and member of Lloyd's syndicate 1301.

5.     At all relevant times, CANADIAN NATIONAL RAILWAY COMPANY (hereinafter referred to as "CNR") was a foreign corporation headquartered in Montreal, Quebec, most closely resembling the U.S. business form of a corporation.

6.     Plaintiffs CCC, CHUBB, LLOYD'S, and RSA are all of the underwriters of a Certificate of Insurance effectuated with CCC, issued to CNR and numbered 113647 (the "Policy"). The underwriters of the Policy are referred to herein as "Plaintiffs."

3

7.     At all relevant times, DAVID J. JOSEPH COMPANY (hereinafter "DJJ") was a corporation with its principal place of business in the State of Ohio.

## JURISDICTION AND VENUE

8.     The cause of action, as alleged in this Complaint, arose in whole or in part in the County of St. Clair, State of Michigan.

9.     The damages that occurred in this action exceed Twenty-Five Thousand Dollars ($25,000.00).

10.    That jurisdiction and venue are proper in this Court.

## GENERAL ALLEGATIONS

11.    At all relevant times, CNR was a duly licensed railroad company, authorized to operate within the Unites States and Canada, a system of railroads as a common carrier of freight, including rail systems in and through the state of Michigan and Ontario, Canada.

12.    Upon information and belief, and at all relevant times, DJJ was engaged in the business of, *inter alia,* owning, operating, leasing, repairing, modifying, rehabbing, and maintaining its own private fleet of gondola railcars for use on national and transnational railway lines, including rail lines located in the state of Michigan and Canada.

13.    Moreover, DJJ was also engaged in the business of providing inspection, testing, and engineering services for railcars, as well as providing modifications and conversions of older railcars, and held itself as an expert in those areas.

4

14. Upon information and belief, DJJ purchased and outfitted, in 2012, Car 53, No. DGGX30478 ("RAILCAR"), which was an open-top gondola car that was manufactured in 1978 by Berwick Forge and was originally used to haul coal.

15. Upon information and belief, DJJ inspected, rehabbed, converted, and/or modified the subject RAILCAR and repurposed the RAILCAR for use on CNR's rail lines.

16. At all relevant times, Defendant DJJ was the owner of the RAILCAR.

17. Upon information and belief, and prior to June 28, 2019, Defendant DJJ leased and/or bailed the RAILCAR to CNR for the purpose of hauling and transporting cargo on CNR's rail lines. Upon information and belief, DJJ has a copy of the written agreement in its possession.

18. At all material times, it was an express or implied term of the Contract that DJJ would only put railcars onto CNR's network that were:

    a. compliant with all applicable standards;

    b. fit for intended use on a railroad under normal operating conditions; and

    c. properly inspected and maintained in accordance with industry standards.

19. At all relevant times, DJJ knew, or had reason to know, the specific purposes and uses of the RAILCAR on CNR's rail lines in Michigan, and DJJ specifically negotiated rates for CNR's use of the RAILCAR throughout the State of Michigan.

20. At all relevant times, CNR relied upon DJJ's expertise in leasing and/or bailing the subject RAILCAR from DJJ, including DJJ's expertise in inspection, testing, and engineering services for railcars, as well as DJJ's expertise in providing necessary modifications and conversions of older railcars for use in modern freight trains.

5

21.     Upon information and belief, and prior to Defendant DJJ transferring the RAILCAR to CNR, the RAILCAR possessed pre-existing defects, including but not limited to, cracks in weld and corrosion of multiple components, that made the RAILCAR unreasonably dangerous because it was susceptible to significant structural failures when subjected to ordinary and foreseeable forces and stresses for its intended use of transporting cargo.

22.     At all relevant times, said cracks and pre-existing structural defects were latent and undetected by CNR.

23.     At all relevant times, CNR owned and operated a rail line that extends, *inter alia*, from Toronto, Ontario to, at least, Port Huron, Michigan, entering the United States at the Sarina Tunnel, which passes under the Sinclair River, between Port Huron, Michigan and Sarina, Ontario.

24.     On or around June 28, 2019, the RAILCAR was hauled by CNR westbound freight train No. M3833127 ("FREIGHT TRAIN"), which departed from Sarina Yards, in Sarina, Ontario, and consisted of 117 cars (85 loaded, 18 empties, and 14 residue cars).

25.     After the FREIGHT TRAIN departed from Sarina Yards on June 28, 2019, it travelled through the vehicle and cargo inspection system used by the United States Custom Agency for trains entering the United States and entered into the Sarina Tunnel.

26.     The FREIGHT TRAIN was operating within and subject to CNR's applicable timetables, orders, instruction, and management controls. Reaching the mid-point of the Sarina Tunnel span, the locomotive engineer began to gradually switch the throttle from "idle" to "notch 3," which increased the FREIGHT TRAIN speed to 44 mph. After crossing the border into the United States, the FREIGHT TRAIN's emergency brake was automatically deployed.

6

27. Upon information and belief, the FREIGHT TRAIN's emergency brake system deployed automatically due to a derailment of its cars.

28. On or June 28, 2019, the RAILCAR and/or its components failed catastrophically and caused the aforementioned derailment.

29. Investigation following the Derailment further disclosed that the RAILCAR had several defects, including, *inter alia*, cracks in the welds that secured the shear plate to the stub sill and cracks where the stub sill connects to the side sill.

30. The aforementioned defects negatively impacted the RAILCAR's ability to transfer in-train forces.

31. Upon information and belief, the RAILCAR was the initial railcar to derail, and this occurred by reason of a sustained structural failure of the A-end of the RAILCAR. This premature failure of the RAILCAR was the result of the aforementioned defects.

32. Upon information and belief, the RAILCAR was only able to withstand approximately 40% of the car design threshold outlined by the Association of American Railroads (the "AAR") Manual of Standards and Recommended Practices ("MSRP"), Specification M-1001.

33. DJJ knew or ought to have known the RAILCAR was structurally defective and could not withstand normal foreseeable in-train forces.

34. The MSRP, including Specification M-1001, represents industry standards across North America and the RAILCAR should have been compliant with the MSRP, including Specification M-1001. However, it was not in compliance.

35. The in-train forces in the FREIGHT TRAIN were reasonable at all material times; however, the RAILCAR failed because of the aforementioned defects. If the

7

RAILCAR had been compliant with the MSRP specification M-1001 threshold then the RAILCAR would not have failed and the derailment would not have occurred.

36.    As a result of the RAILCAR's failure, cars 52 through 98 derailed, including a tank car carrying sulfuric acid, which breached an estimated 13,000 gallons of the chemical into the tunnel on the railway and nearby property.

37.    Upon information and belief, during the subject occurrence, portions of the derailed FREIGHT TRAIN and portions of the failed RAILCAR were located within the borders of the State of Michigan, and substantial damages caused by the derailment were caused within the borders of the State of Michigan and St. Clair County.

38.    This derailment caused sudden and catastrophic damage and destruction to railway, other railcars, and cargo being carried by the FREIGHT TRAIN. Additionally, CNR incurred liability in cleaning up the accident scene.

39.    As a result of the aforementioned events, CNR and its insurance carriers paid amounts in excess of $8,113,500.00 to replace and repair damaged property (including the cargo carried by the FREIGHT TRAIN), clean-up and extraction of the derailed railcars and their cargo, as well as clean up and remediation of the chemical spill.

40.    Pursuant to the Policy of insurance issued by Plaintiffs, which provided coverage for CNR's property, its lading, and other business interests, CNR submitted claims to the Plaintiffs seeking payment and/or reimbursement for property damage that resulted from the aforementioned derailment.

41.    Plaintiffs were obligated to and did, in fact, pay amounts totaling over $8,113,500.00 to or on behalf of CNR in connection with the loss submitted by CNR stemming from the aforementioned derailment.

RECEIVED JAY M. DEBOYER 06-25-2021 11:19:54 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED

42.     By virtue of said payments, terms of the Policy, and by virtue of equity, Plaintiffs have become and are subrogated to all rights, remedies, and causes of action accruing to CNR against Defendant DJJ.

## COUNT I – NEGLIGENCE

43.     Plaintiffs re-allege and incorporate Paragraphs 1 through 42 for this Count I as if they were set forth and fully pled therein.

44.     At all relevant times, Defendant DJJ owed a duty of reasonable care to commission and/or lease railcars that were free of unreasonably dangerous defects.

45.     That Defendant DJJ was under a duty of care to ensure that its railcars, including the RAILCAR, were fit for use and posed no danger to CNR's operations, and the public, when used under normal operating conditions.

46.     At all relevant times, Defendant DJJ, as an owner and lessor/bailor of railcars used on rail lines, owed certain duties of reasonable care to CNR and the public, including, but not limited to: a duty to only commission and/or lease railcars that were free of unreasonably dangerous defects, a duty to inspect and repair the RAILCAR before leasing and/or bailing it other parties, including CNR, a duty to maintain the RAILCAR in a reasonably safe condition, a duty to inspect the RAILCAR for unsafe, defective and/or dangerous conditions, and a duty to warn CNR of such unsafe, defective and/or dangerous conditions.

47.     On information and belief, Defendant DJJ breached its duties of care by certain negligent acts and omissions, which include, but are not limited to:

   a. carelessly and negligently failed to adequately inspect and test the RAILCAR before leasing and/or bailing it to CNR;

9

b. carelessly and negligently retrofitted, modified, repaired, converted, and/or engineered the RAILCAR before leasing and/or bailing it to CNR;

c. carelessly and negligently failed to retrofit, modify, repair, convert, and/or engineer the RAILCAR before leasing and/or bailing it to CNR;

d. carelessly and negligently failed to maintain and repair the RAILCAR for all relevant time periods;

e. carelessly and negligently repurposed a railcar which was over 40 years old, and which had been used for hauling coal, to be used by CNR in its FREIGHT TRAIN when it was structurally unsound and unsafe for such use;

f. carelessly and negligently failed to supply CNR with a RAILCAR that could withstand ordinary and foreseeable buff forces;

g. carelessly and negligently failed to warn CNR of such unsafe, defective and/or dangerous conditions;

h. carelessly and negligently failed to ensure that its railcars, including the RAILCAR, complied with industry standards and all applicable norms;

i. its failure to have a regular system of inspection and maintenance of its railcars, including the RAILCAR;

j. carelessly and negligently failed to train employees to conduct a regular system of inspection and maintenance of its railcars including the RAILCAR;

k. carelessly and negligently failed to hire competent and qualified employees to conduct a regular system of inspection and maintenance of its railcars including the RAILCAR;

l. carelessly and negligently failed to properly inspect and test the the RAILCAR after performing modifications; and

m. was otherwise careless and negligent in leasing and/or bailing the dangerous and defective RAILCAR to CNR.

10

48.     On or about June 28, 2019, as a direct and proximate result of one or more of Defendant DJJ's negligent acts or omissions, the RAILCAR suddenly and calamitously failed and came apart, causing the aforementioned derailment.

49.     On or about June 28, 2019, and as a direct and proximate result of the aforementioned careless and negligent acts and omissions on the part of Defendant DJJ, the derailment caused damage and destruction to certain real and personal business property and other business interests belonging to CNR.

50.     Pursuant to the policy of insurance issued to CNR by Plaintiffs, Plaintiffs paid to or on behalf of CNR sums totaling in excess of $8,113,500.00 to repair or replace damaged or destroyed aforementioned property and business interests, and to otherwise compensate CNR for losses sustained by said derailment.

51.     By virtue of said payments, terms of said policy of insurance, and by virtue of equity, Plaintiffs have become and are subrogated to all rights, remedies, and causes of action accruing to CNR against Defendant, DJJ.

**WHEREFORE**, Plaintiffs, CONTINENTAL CASUALTY COMPANY, as subrogee of Canadian National Railway Company, CHUBB INSURANCE CO., as subrogee of Canadian National Railway Company, CERTAIN UNDERWRITERS AT LLOYD'S, as subrogee of Canadian Railway Company, and RSA CANADA, as subrogee of Canadian National Railway Company, pray for judgment to be entered in their favor and against DAVID J. JOSEPH COMPANY, in an amount in excess of $8,113,500.00, plus costs and for such other or further relief as this Court deems equitable and just.

## COUNT II – BREACH OF CONTRACT AND IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

RECEIVED JAY M. DEBOYER 06-25-2021 11:19:54 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED

52.    Plaintiffs re-allege and incorporate Paragraphs 1 through 51 for this Count II as if they were set forth and fully pled therein.

53.    That prior to June 28, 2019, CNR entered into a Contract with Defendant DJJ in which the RAILCAR was placed into service on CNR's network, including for transportation between Ontario and Michigan at the time of derailment.

54.    CNR performed all its obligations under said Contract.

55.    Defendant DJJ was obligated to place the RAILCAR in a good and workmanlike manner, free from defect or safety hazard.

56.    At all relevant times, Defendant DJJ owned the RAILCAR and supplied the RAILCAR to CNR for use on its railways, including use on the FREIGHT TRAIN.

57.    At all relevant times, Defendant DJJ had actual knowledge of the particular use and purpose for which CNR would haul or otherwise utilize the RAILCAR.

58.    At all relevant times, CNR reasonably expected that the railcars and equipment supplied by Defendant DJJ, including the subject RAILCAR, were fit for use on CNR's lines and locomotives, including the subject FREIGHT TRAIN.

59.    At all relevant times, Defendant DJJ owed a duty to CNR to supply railcars, including the subject RAILCAR, and equipment that were fit for use on CNR's lines and locomotives.

60.    The RAILCAR, which was leased and/or bailed by Defendant DJJ to CNR, was in an unreasonably dangerous and/or defective condition when it left Defendant DJJ's control and was not reasonably safe or fit for reasonably foreseeable or intended use.

61.    That Defendant breached its duties under the Contract and warranty of fitness for a particular purpose, due to the following acts and/or omissions:

     a.  the RAILCAR did not comply with all applicable standards;

     b.  the RAILCAR was not fit for intended use on a railroad under normal operating conditions;

     c.  the RAILCAR was not properly inspected and maintained in accordance with industry standards;

     d.  the RAILCAR was not able to withstand reasonable forces;

     e.  the RAILCAR was defective and/or presented a danger for CNR's operations; and

RECEIVED JAY M. DEBOYER 06-25-2021 11:19:54 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED

        f.   otherwise breached express and/or implied terms of the Contract.

62.    On or about June 28, 2019, and as a direct result of Defendant DJJ's aforementioned breaches of contract and warranty, the RAILCAR suddenly and calamitously failed, causing the aforementioned derailment.

63.    On or about June 28, 2019, as a direct and proximate result of the derailment, CNR was caused to suffer a sudden and catastrophic damages, including damages to personal business property, lading, and other business interests.

64.    Pursuant to the policy of insurance issued to CNR Plaintiffs, Plaintiffs paid to or on behalf of CNR sums totaling in excess of $8,113,500.00 to repair or replace damaged or destroyed property and business interests, and to otherwise compensate CNR for losses sustained by said derailment.

65.    By virtue of said payments, terms of the Policy of insurance, and by virtue of equity, Plaintiffs have become and are subrogated to all rights, remedies, and causes of action accruing to CNR against Defendant, DJJ.

**WHEREFORE**, Plaintiffs, CONTINENTAL CASUALTY COMPANY, as subrogee of Canadian National Railway Company, CHUBB INSURANCE CO., as subrogee of Canadian National Railway Company, CERTAIN UNDERWRITERS AT LLOYD'S, as subrogee of Canadian Railway Company, and RSA CANADA, as subrogee of Canadian National Railway Company, pray for judgment to be entered in their favor and against DAVID J. JOSEPH COMPANY, in an amount in excess of $8,113,500.00, plus costs and for such other or further relief as this Court deems equitable and just.

## COUNT III – INDEMNIFICATION

66.    Plaintiffs re-allege and incorporate Paragraphs 1 through 65 for this Count III as if they were set forth and fully pled therein.

67.    The acts and/or omissions of Defendant DJJ was the active, primary, and direct cause of the damages alleged herein.

13

68. Plaintiffs and their insured, CNR, were free from negligence and did not cause the damages alleged herein.

69. As a result of the acts and/or omissions of Defendant DJJ, Plaintiffs, through their obligation to CNR, incurred liability, and Plaintiffs are entitled to indemnification from Defendant DJJ for the damages alleged herein.

70. Pursuant to the Policy of insurance issued to CNR by Plaintiffs, Plaintiffs paid to or on behalf of CNR sums totaling in excess of $8,113,500.00 to repair/replace damaged/ destroyed lading and related expenses, and to otherwise compensate CNR for losses sustained by said derailment.

71. By virtue of said payments, terms of the Policy of insurance, and by virtue of equity, Plaintiffs have become and are subrogated to all rights, remedies, and causes of action accruing to CNR against Defendant, DJJ.

**WHEREFORE**, Plaintiffs, CONTINENTAL CASUALTY COMPANY, as subrogee of Canadian National Railway Company, CHUBB INSURANCE CO., as subrogee of Canadian National Railway Company, CERTAIN UNDERWRITERS AT LLOYD'S, as subrogee of Canadian Railway Company, and RSA CANADA, as subrogee of Canadian National Railway Company, pray for judgment to be entered in their favor and against DAVID J. JOSEPH COMPANY, in an amount in excess of $8,113,500.00, plus costs and for such other or further relief as this Court deems equitable and just.

## COUNT IV – CONTRIBUTION

72. Plaintiffs re-allege and incorporate Paragraphs 1 through 71 for this Count IV as if they were set forth and fully pled therein.

73. In the alternative, and should the evidence show that CNR was actively negligent in causing the damages alleged herein, the actions of Plaintiffs' insured and defendant combined to create the common liability alleged herein.

14

74.    Plaintiffs and CNR settled, in good faith, more than $8,113,500.00 of claims with CNR's customers/shippers for the goods that were damaged and/or destroyed as a result of this derailment.

75.    The amounts by Plaintiffs in settlement of these claims are greater than its insured's proportionate share of common liability.

76.    In addition to payment of the actual claim, Plaintiffs incurred damages incidental to the extinguishment of the common liability.

**WHEREFORE**, Plaintiffs, CONTINENTAL CASUALTY COMPANY, as subrogee of Canadian National Railway Company, CHUBB INSURANCE CO., as subrogee of Canadian National Railway Company, CERTAIN UNDERWRITERS AT LLOYD'S, as subrogee of Canadian Railway Company, and RSA CANADA, as subrogee of Canadian National Railway Company, pursuant to MCL § 600.2925a, *et seq.*, pray for contribution against the joint tortfeasor DAVID J. JOSEPH COMPANY, in an amount in excess of $8,113,500.00, plus costs and for such other or further relief as this Court deems equitable and just.

## JURY DEMAND

NOW COME Plaintiffs, by and through their attorneys, GROTEFELD, HOFFMANN, GORDON, OCHOA & EVINGER, LLP and hereby demand a trial by jury in this matter.

Dated: June 25, 2021

Respectfully submitted,

Plaintiffs, CONTINENTAL CASUALTY COMPANY, as subrogee of Canadian National Railway Company, CHUBB INSURANCE CO., as subrogee of Canadian National Railway Company, CERTAIN UNDERWRITERS AT

15

LLOYD'S, as subrogee of Canadian
Railway Company, and RSA CANADA,
as subrogee of Canadian National
Railway Company,


By: /s/ Timothy S. Poeschl
                    *Counsel*


Timothy S. Poeschl, Esq., P84944
GROTEFELD HOFFMANN
GORDON OCHOA & EVINGER, LLP
150 S Fifth Street
Suite 3650
Minneapolis, Minnesota 55402
(612) 564-4881
tpoeschl@ghlaw-llp.com

16

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>31st   JUDICIAL CIRCUIT<br>ST. CLAIR   COUNTY | JURY DEMAND | ‖‖‖‖‖‖‖‖‖‖‖<br>21001181CB |
|---|---|---|

**Court address**
31st Circuit Court, 201 McMorran Blvd., Port Huron, MI 48060

**Court telephone no.**
810-985-2031

| Plaintiff(s) name(s)<br>Continental Casualty Company, et al. | v | Defendant(s) name(s)<br>David J. Joseph Company |
|---|---|---|
| Plaintiff's address and telephone no. or attorney name, bar no., address, and telephone no.<br>Timothy Poeschl, Esq., P84944- (612) 564-4881<br>GROTEFELD HOFFMANN<br>150 S Fifth Street, Ste. 3650<br>Minneapolis, MN 55402 | | Defendant's address and telephone no. or attorney name, bar no., address, and telephone no.<br>c/oThe Corporation Company,<br>40600 Ann Arbor RD E STE 201<br>Plymouth, MI, 48170 |

☐ Probate   In the matter of _____

☐ Juvenile   In the matter of _____

1. I demand a jury trial.

06/25/2021
**Date**

/s/ Timothy Poeschl
**Signature**

*[stamp] 2021 JUN 25 PH 12:51 ST. CLAIR COUNTY CLERK JAY M. DEBOYER*

Approved, SCAO
Form MC 22, Rev. 4/19
MCL 600.857(3), MCL 600.2529(1)(c),
MCR 2.508, MCR 2.509, MCR 3.911

Form Distribution:
Original - Court
1st copy - Plaintiff/Petitioner
2nd copy - Defendant/Respondent

**RECEIVED JAY M. DEBOYER 06-25-2021 11:19:54 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

